# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. CACE16004183

RONALD MEYERS,

        Plaintiff,

v.

VALEANT PHARMACEUTICALS NORTH
AMERICA, LLC f/k/a SALIX
PHARMACEUTICALS, LTD,

        Defendant.

_____/

## DECLARATION OF KALEENA NGUYEN

I, Kaleena Nguyen, declare:

1.    I am over the age of 18 and competent to give this Declaration. All information contained in this Declaration is based upon my personal knowledge.

2.    I give this Declaration of my own free will without expectation of reward, and without any undue influence, coercion, or duress.

3.    I am the duly elected Secretary of Valeant Pharmaceuticals North America LLC. Valeant Pharmaceuticals North America, LLC ("VPNA") is a Delaware limited liability company whose sole member is Valeant Pharmaceuticals International, a Delaware corporation ("VPI"). VPNA and VPI have their headquarters and principal place of business in New Jersey.

1

4.      Plaintiff, Ronald Myers, was employed by VPNA in Florida. Plaintiff's allegations in the Complaint involve the Salix Pharmaceuticals, Inc. Amended Employee Retention Policy ("Salix Retention Plan"). A copy of the Salix Retention Plan is attached to this Declaration as Exhibit 1. The Salix Retention Plan "is governed by" the Employee Retirement Income Security Act of 1974 (ERISA)." Ex. 1, p. 4 (Governing Law).

I DECLARE, UNDER PENALTY OF PERJURY, IN ACCORDANCE WITH THE LAWS OF THE UNITED STATES, INCLUDING, 28 U.S.C. § 1746, THAT THE FOREGOING IS TRUE AND CORRECT ACCORDING TO MY PERSONAL KNOWLEDGE.

Executed this 16th day of April, 2016.

Kaleena Nguyen

2

**SALIX PHARMACEUTICALS, INC.**
**Amended Employee Retention Policy**
**Summary Plan Description and Plan**

**Effective as amended: February 4, 2014**

This is the summary plan description and plan document for the amended Employee Retention Policy (the "Policy") for Salix Pharmaceuticals, Inc. (the "Company"). In connection with Company's goals to retain critical employees, motivate our workforce, maintain or increase the value of the Company and treat our employees fairly and honestly, we have developed this Policy. The Policy provides severance benefits to certain groups of employees who lose their positions because of certain Company changes.

This document describes who is eligible for severance payments under the Policy, the conditions that an eligible employee must meet to receive these benefits, and general information about the Policy and employees' rights under it.

**ELIGIBILITY**

The employees who are subject to this Policy include all employees below the level of Associate Vice President (the "Covered Employees"). This Policy specifically excludes all employees above the level of Executive Director and those employees that have an employment contract with a severance provision.

The benefits under this Policy will only be triggered upon the occurrence of both of the following events:

(1)    A "Change in Control" of Salix has occurred; and

(2)    A Covered Employee is terminated without "Reasonable Cause" or terminates his or her employment with "Good Reason" within 12 months after the date of the Change in Control.

(For the purposes of this Policy, the terms "Change in Control," "Reasonable Cause" and "Good Reason" are defined in the form of letter agreement attached as Exhibit A.)

**BENEFITS**

Each employee covered by this Policy will receive an individual letter in substantially the form of Exhibit A. Upon the occurrence of the events listed above, and proper execution of a separation agreement and general release, the Covered Employee will be entitled to the following benefits:

(1)    Severance pay in the form of continued payment of Covered Employee's base salary for a predetermined number of months (based upon Covered Employee's level of employment).

8018-53-814429-v1

EXHIBIT 1

(2) Reimbursement of premiums for COBRA continuation coverage for group health insurance for Covered Employee and his/her eligible dependents for the period of time that Covered Employee is receiving severance pay.

(3) Payment in a lump sum of Covered Employee's pro rata bonus based upon the target bonus percentage for the Covered Employee's level of employment and the length of time employed during the current calendar year, calculated as of the date of termination.

(4) For any employee who relocated within 18 months prior the date of termination, reimbursement of the employee's relocation costs for return to the city or town from which he or she was relocated up to the amount received by the employee from the Company for the original relocation.

(5) Outplacement assistance at a provider selected by the Company for a predetermined number of months (based upon Covered Employee's level of employment).

## ADMINISTRATION OF THE PLAN

The Senior Vice President of Human Resources is the Plan Administrator who will determine your eligibility for severance benefits and the amount of severance benefits.  The Plan Administrator is responsible for administering the Policy and has discretion to interpret its terms.

## CLAIMS AND APPEALS PROCEDURES

### Claims Procedure

If you believe that you are entitled to benefits under this Policy and have not received them, you or your authorized representative may file a claim for benefits by writing to the Plan Administrator at the following address:  8510 Colonnade Center Drive, Raleigh, N.C. 27615. Your letter must state the reason why you believe that you are entitled to benefits, and your letter must be received no later than 90 days after your termination of employment, or 90 days after a payment was due, whichever comes first.

If your claim is denied, in whole or in part, you will receive a written response within 90 days. This response will include (i) the reason(s) for the denial, (ii) reference(s) to the specific plan provisions on which denial is based, (iii) a description of any additional information necessary to perfect the claim and an explanation of why it is needed, (iv) a description of the Policy's claims and appeals procedures and the time limits that apply, and (v) a statement of your right to bring suit under Section 502(a) of Employee Retirement Income Security Act of 1974 (ERISA)  following the denial of an appeal.  In some cases more than 90 days may be needed to make a decision, in which case you will be notified prior to the expiration of the 90 days that more time is needed to review the claim and the date by which the Plan Administrator expects to render the decision. In no event will the extension be for more than an additional 90 days.

8018-53-814429-v1

2

**Appeal of Denied Claim**

You or your authorized representative may appeal a denied claim by filing an appeal with the Plan Administrator within 60 days after your claim is denied. Your appeal must be sent to the Plan Administrator at the following address: 8510 Colonnade Center Drive, Raleigh, N.C. 27615. As part of the appeal process you will be given the opportunity to submit written comments and information and be provided, upon request and free of charge, with copies of documents and other information relevant to your claim. The review on appeal will take into account all information submitted on appeal, whether or not it was provided for in the initial benefit determination. A decision will be made on your appeal within 60 days, unless additional time is needed. If more time is needed, you will be notified prior to the expiration of the 60 days that up to an additional 60 days is needed and the date by which the Plan Administrator expects to render the decision. If your appeal is denied, in whole or in part, you will receive a written response which will include (i) the reason(s) for the denial, (ii) references to the specific plan provisions on which the denial is based, (iii) a statement that you are entitled to receive, upon request and free of charge, reasonable access to and copies of all documents and other information relevant to your claim on appeal, and (iv) a statement of your right to bring an action under Section 502(a) of ERISA.

If your claim is denied on appeal, you have a right to bring an action under Section 502(a) of ERISA. You must pursue all claims and appeals procedures described in the Plan document before you seek any other legal recourse with respect to benefits under the Policy. In addition, any lawsuit must be filed within one year from the date of the final denial of your appeal.

The Plan Administrator (or a designee) shall have sole absolute discretion over claims and appeals determinations.

## PLAN DOCUMENT, AMENDMENT AND TERMINATION

The Company reserves the right to amend the Policy at any time, for any reason, and without prior notice. Amendments must be in writing and adopted by the Plan Administrator.

## PLAN ADMINISTRATION

### Plan Sponsor

Salix Pharmaceuticals, Inc. is the Plan Sponsor. The Plan Sponsor's Employer Identification Number is 77-0234925. The address of the Plan Sponsor is: 8510 Colonnade Center Drive, Raleigh, N.C. 27615.

### Plan Administrator

The Plan Administrator is the Senior Vice President of Human Resources of Salix Pharmaceuticals, Inc. The Plan Administrator has full authority to administer the Policy, and in that connection he or she has full discretionary authority to interpret the Policy and to make decisions regarding eligibility for benefits under the Policy and the amount of benefits due under the Policy. The address and telephone number of the Plan Administrator is:

8018-53-814429-v1                                    3

Salix Pharmaceuticals, Inc.
Attn:  Jenifer Reynolds, Senior Vice President of Human Resources
8510 Colonnade Center Drive
Raleigh, N.C. 27615
(919) 862-1027

The Plan Administrator may delegate any of its authority, including the authority to hear claims and appeals, to other Company officers or employees.

## Plan Identifying Information

The Policy is a welfare benefit plan that provides severance benefits.  The plan year is the calendar year.  The Policy is considered a component plan under a plan named the Salix Pharmaceuticals Welfare Benefit Plan, ERISA Plan Number 501.

## Funding of Benefits

The entire cost of the Policy is paid by the Company from its general assets.

## Service of Process, Limitation Period

Legal service of process can be made upon the Secretary of the Company by directing service to that officer c/o Salix Pharmaceuticals, Inc., 8510 Colonnade Center Drive, Raleigh, N.C. 27615.  Process may also be served upon the Plan Administrator.  You must follow all claims procedures described in this document before you seek any other legal recourse with respect to benefits payable under the Policy.  Further, if your claim is denied, any lawsuit must be filed within one year of the final denial on appeal of your claim.

## NO CONTRACT OF EMPLOYMENT

Nothing in this Policy creates a vested right to benefits in any employee or any right to be retained in the employ of the Company.

## GOVERNING LAW

The Policy is governed by Employee Retirement Income Security Act of 1974 (ERISA).  ERISA is a federal law.  To the extent that ERISA (or other federal law) relies upon state law for certain rules or guidance, the Policy shall be interpreted according to the laws of the State of North Carolina.

## EFFECTIVE DATE

This document describes the Policy as in effect on February 4, 2014.

8018-53-814429-v1                                                         4

**STATEMENT OF ERISA RIGHTS**

The Policy is governed by ERISA, which guarantees certain rights and protections for employees who are eligible for benefits under the Policy ("Plan participants").

ERISA provides that all Plan participants shall be entitled to: (1) examine, without charge, at the Plan Administrator's office and at other specified locations, Plan documents, and a copy of the latest annual report (Form 5500 series) for the Plan.  The annual reports are also available for review at the Public Disclosure Room of the Employee Benefits Security Administration of the U.S. Department of Labor, and (2) obtain copies of the Plan document and summary plan description, and the latest annual report (Form 5500) series upon written request to the Plan Administrator.  There may be a reasonable charge for such copies.

In addition, ERISA imposes duties upon those who are responsible for the operations of employee benefit plans.  The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants. No one, including the Company or any person, may fire you or otherwise discriminate against you to prevent you from obtaining a Plan benefit or exercising your rights under ERISA.  If your claim for a Plan benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights.  For instance, if you request a copy of the Plan document or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a federal court.  In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator.  If you have a claim for benefits which is denied after final review, or is ignored in whole or in part, you may file suit in a state or federal court.  If it should happen that Plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor or you may file suit in a federal court.  The court will decide who should pay court costs and legal fees.  If you are successful, the court may order the person you have sued to pay these costs and fees.  If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

If you have any questions about the Policy, you should contact the Plan Administrator.  If you have any questions about this statement, or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you may contact the nearest office of the Employee Benefits Security Administration (formerly known as the Pension and Welfare Benefits Administration), U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.  You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## EXHIBIT A

### EXAMPLE LETTER AGREEMENT:  DO NOT SIGN

In consideration of your services to Salix Pharmaceuticals, Inc. (hereinafter "Salix" or the "Company"), the Company is pleased to offer to you separation benefits in the event that your employment with Salix is terminated due to a change in control, subject to the terms and conditions set out in this letter.  In order to qualify for these separation benefits, you will have to meet all of the following requirements:

1. You must sign and not revoke (if applicable) a general release in substantially the form attached hereto, releasing Salix from all claims occurring up to the date you sign the release.

2. Your employment must be terminated by Salix or its successor without "Reasonable Cause" (as defined below), or you must terminate your employment for "Good Reason" (as defined below) (such effective date of termination the "Termination Date"), within twelve (12) months after a "Change in Control" (as defined below) of the Company or its parent, Salix Pharmaceuticals, Ltd.  No separation benefits will be paid if you are terminated under any other circumstances, or if you are terminated for "Reasonable Cause," if you resign or retire without "Good Reason" or if your employment is terminated due to death or disability.

3. "Reasonable Cause" shall mean:

(a) You commit any act of gross negligence, fraud, dishonesty, or willful violation of any law or material violation of any significant written policy of Salix, that causes or is likely to cause material harm to Salix;

(b) You are convicted of (i) a felony or (ii) a serious crime involving moral turpitude;

(c) You are guilty of willful or gross failure to substantially perform the duties reasonably assigned to you, or any intentional refusal without compelling reason by you to discharge your job responsibilities and/or respond to Salix's legitimate job-related requests, insofar as such duties, responsibilities and/or requests do not contravene law and are consistent with your position(s);

(d) You fail to cooperate in an investigation conducted and/or undertaken by Salix or a governmental agency which has reasonable and legitimate objectives; or

(e) You engage in any act of intentional conflict of interest related to Salix that results in or is likely to result in material economic and/or other material damage to Salix.

4.      "Good Reason" shall mean the occurrence of any of the following events or conditions:

(a)      A material adverse change in, or the assignment to you of any duties or responsibilities which are inconsistent with, your status, title, position or responsibilities (including reporting responsibilities) with Salix;

(b)      A reduction in your salary and/or benefits except to the extent such reduction is comparable to percentage reductions in salary and/or benefits of all other employees of Salix, or any failure to pay you any compensation or benefits to which you are entitled within five (5) days of the date due; or

(c)      Salix relocates your workplace more than fifty (50) miles from your current workplace.

However, "Good Reason" shall not exist unless you notify Salix of the existence of the "Good Reason" event or condition within ninety (90) days of its occurrence and unless Salix after such notification fails to remedy the event or condition within thirty (30) days of notice.

5.      A "Change in Control" shall mean a change in control of a nature that would be required to be reported in response to item 6(e) of Schedule 14A of Regulation 14A promulgated under the Securities Exchange Act of 1934 (the "Exchange Act"), as such Schedule, Regulation and Act were in effect on the date of this letter, assuming that such Schedule, Regulation and Act applied to Salix, provided that such a change in control shall be deemed to have occurred at such time as:

(a)      Any "person" (as that term is used in Section 13(d) and 14(d)(2) of the Exchange Act) (other than the Company, a subsidiary or an affiliate of the Company) becomes, directly or indirectly, the "beneficial owner" (as defined in Rule 13d-3 under the Exchange Act) of securities representing a 33-1/3% or more of the combined voting power for election of members of the Company's Board of Directors ("Board") of the then outstanding voting securities of the Company;

(b)      During any period of two consecutive years or less, individuals who at the beginning of such period constituted the Board of the Company cease, for any reason, to constitute at least a majority of the Board, unless the election of nomination for election of each new member of the Board was approved by a vote of at least two-thirds of the members of the Board then still in office who were members of the Board at the beginning of the period;

(c)      The equityholders of the Company approve any merger or consolidation to which the Company is a party as a result of which the persons who were equityholders of the Company immediately prior to the effective date of the merger or consolidation (and excluding, however, any shares held by any party to such merger or consolidation and their affiliates) shall have beneficial ownership of less than 50% of the combined voting

8018-53-814429-v1                                      2

power for election of members of the Board (or equivalent) of the surviving entity following the effective date of such merger or consolidation; or

(d)      The equityholders of the Company approve any merger or consolidation as a result of which the equity interests in the Company shall be changed, converted or exchanged (other than a merger with a wholly-owned subsidiary of the Company) or any liquidation of the Company or any sale or other disposition of all or substantially all of the assets of the Company.

However, in no event shall a Change in Control be deemed to have occurred with respect to you, if you are part of a purchasing group that consummates the Change in Control transaction.  You shall be deemed "part of a purchasing group" for purposes of the preceding sentence if you are either directly or indirectly an equity participant in the purchasing group (except for (i) passive ownership of less than 3% of the stock of the purchasing group, or (ii) ownership of equity participation in the purchasing group which is otherwise not significant, as determined prior to the Change in Control by the Company).

Based upon your position with the Company, and following your execution of the general release referenced above and the expiration of any consideration and rescission periods mandated by law, your separation benefits will be as follows:

(1)      You will be entitled to receive a severance in the form of continued payment of your base salary for 18 months if you hold title of Director or above, or 12 months if you hold any other title (the "Benefit Period").  The severance payments will be semi-monthly cash payments (minus applicable federal, state and local payroll taxes, and other withholdings required by law or authorized by you)  paid in accordance with the Company's payroll procedures through the end of the Benefit Period;

(2)      If you properly and timely elect to continue your health insurance benefits under COBRA following the Termination Date, the Company will reimburse you for your applicable COBRA premiums necessary to continue the group health insurance coverages (medical and dental, but not disability or life) for the Benefit Period.  Following this period, you may have the right to continue your health insurance coverage under COBRA at your own expense;

(3)      You will be entitled to receive a pro rata bonus payment based upon the target bonus percentage for your level of employment and the length of time employed during the calendar year prior to the Termination Date.  The pro rata bonus payment will be paid in a lump sum (minus applicable federal, state and local payroll taxes, and other withholdings required by law or authorized by you);

(4)      If you relocated in connection with your employment with Salix within twelve (12) months prior to the Termination Date, you will be reimbursed for the relocation costs for your return to the city or town from which you were relocated up to the amount received by you from Salix for the original relocation.  You must submit your reimbursement request and back-up documentation in accordance with Salix's normal

8018-53-814429-v1                                        3

relocation policy within six (6) months after the Termination Date to receive the reimbursement.  If you choose not to return to your city or town of origin, you will not be eligible to receive this benefit; and

(5)        You will be entitled to receive outplacement assistance for the duration of the Benefits Period from a provider selected by Salix.

This letter agreement is governed by the laws of North Carolina, including the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 et seq

This letter agreement is binding upon Salix and its successors and assigns, including any parent, subsidiary and affiliate existing today or becoming such as a result of any Change in Control.

Once again, we thank you for your past, present and future contributions to the success of the Company.

Sincerely yours,
SALIX PHARMACEUTICALS, INC.

8018-53-814429-v1                                           4